## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARIE A. BRADY,                  :        **CIVIL NO.: 1:20-CV-00852**
                                 :
       Plaintiff,                :
                                 :        (Magistrate Judge Schwab)
    v.                         :
                                 :
                                 :
KILOLO KIJAKAZI, Acting          :
Commissioner of Social Security, [1]  :
                                 :
       Defendant.                :

## <u>MEMORANDUM OPINION</u>

### I.    Introduction.

This is a social security action brought under 42 U.S.C. § 1383(c)(3)

(incorporating 42 U.SC. § 405(g)).  The plaintiff, Marie A. Brady ("Brady"), seeks

judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying her claims for supplemental security income under

---

[1]  Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the Defendant in this action.  *See* Fed. R. Civ. P. 25(d) (providing that when a public officer is sued in his or her official capacity ceases to hold office while the action is pending. "[t]he officer's successor is automatically substituted as party"); 42. U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any chance in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Title XVI of the Social Security Act.  For the reasons set forth below, we find that the Commissioner's decision is supported by substantial evidence, and accordingly it will be affirmed.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner.  *See Doc.* 10-1 through 10-7.[2]  On December 29, 2016, Brady applied for disability insurance benefits, alleging that she had been disabled since September 30, 2016.  *Admin. Tr.* at 15.  The Social Security Administration initially denied Brady's claim on March 22, 2017.  *Id.*  Following the initial denial of Brady's claim, the case went before the Administrative Law Judge Gerard W. Langan (the "ALJ"), who concluded that Brady, represented by counsel, was not disabled, and denied her benefits on that basis in a written decision issued on March 12, 2019.  *Id.* at 12-32.  Brady requested a review of the ALJ's decision before the Social Security Administration's Appeals Council, but the Appeals Council denied her request for review on March 31, 2020.  *Id.* at 1-6.  Brady then filed a complaint with this court on May 26, 2020, seeking judicial review of the Commissioner's final decision to deny her benefits.  *Doc. 1.*  On November 4, 2020, the Commissioner filed an

---

[2] The facts of the case are well known to the parties and will not be repeated here. Instead, we will recite only those facts that bear on Brady's claim.

answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs. 9-10*. The parties have filed briefs, and this matter is ripe for decision. *Docs. 15, 18, 19*.

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Brady is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

### B. Initial Burdens of Proof, Persuasion, and Articulation.

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 20 C.F.R. §§ 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any

other substantial gainful work that exists in the national economy.  42 U.S.C. §

423(d)(2)(A) ; 20 C.F.R. § 404.1505(a).[3]

The ALJ follows a five-step sequential-evaluation process to determine

whether a claimant is disabled.  20 C.F.R. § 404.1520(a).  Under this process, the

ALJ must sequentially determine: (1) whether the claimant is engaged in

substantial gainful activity; (2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals a listed impairment;

(4) whether the claimant is able to do his or her past relevant work; and

(5) whether the claimant is able to do any other work, considering his or her age,

education, work experience, and RFC.  20 C.F.R. § 404.1520(a)(4)(i)-(v).

The ALJ must also assess a claimant's RFC at step four.  *Hess v. Comm'r of

Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an

individual is still able to do despite the limitations caused by his or her

impairment(s).'"  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d

Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see

also* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1).  In making this assessment, the

ALJ considers all the claimant's medically determinable impairments, including

---

[3] A "physical or mental impairment" is defined as an impairment resulting from
"anatomical, physiological, or psychological abnormalities which are demonstrable
by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C.
§§ 423(d)(3), 1382c(a)(3)(D).

any non-severe impairment identified by the ALJ at step two of his or her analysis.
20 C.F.R. § 404.1545(a)(2).

"The claimant bears the burden of proof at steps one through four" of the
sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634
(3d Cir. 2010). But at step five, "the burden of production shifts to the
Commissioner, who must . . . show there are other jobs existing in significant
numbers in the national economy which the claimant can perform, consistent with
her medical impairments, age, education, past work experience, and residual
functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive
requisites. Most significantly, the ALJ must provide "a clear and satisfactory
explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642
F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which
evidence he has rejected and which he is relying on as the basis for his finding."
*Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The
"ALJ may not reject pertinent or probative evidence without explanation."
*Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise,
"the reviewing court cannot tell if significant probative evidence was not credited
or simply ignored." *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

6

**IV.    The ALJ's Decision Relevant to the Claims raised on Appeal.**

On March 12, 2019, the ALJ issued a decision denying Brady benefits.

*Admin. Tr.* at 12.  First, the ALJ found that Brady met the insured status

requirements of the Social Security Act through December 31, 2021.  *Id*. at 17.  At

step one of the five-step sequential-evaluation process, the ALJ found that Brady

had not engaged in substantial gainful activity since September 30, 2016, the

alleged onset date.  *Id.*   At step two, the ALJ found that Brady had the severe

impairments of bipolar disorder and depressive disorder.  *Id.* at 18.  Additionally,

the ALJ found that Brady's cardiac dysrhythmia was a non-severe impairment, as it

does not have more than a de minimis effect on her ability to perform basic work

activities.  *Id*.  At step three of the sequential-evaluation process, the ALJ found

that none of Brady's impairments met or equaled the severity of the impairments

listed under 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 18-20.

The ALJ fashioned an RFC, considering Brady's limitations from her

impairments:

> After careful consideration of the entire record, the undersigned finds
> that the claimant has the residual functional capacity to perform a full
> range of work at all exertional levels but with the following non-
> exertional limitations:  the claimant can have no more than occasional
> exposure to extreme heat and humidity. The claimant is able to
> understand, retain, and carry out simple instructions and tasks with
> few workplace changes.  The claimant can perform frequent simple
> decisionmaking with respect to work-related activities.  The claimant

cannot interact, other than incidental contact, with members of the
public and can occasionally interact with supervisors and co-workers.

*Id.* at 20-21.

Relevant to the arguments raised here, the ALJ considered the psychological

consultative examination of Jennifer Betts, Psy.D. ("Dr. Betts"), who opined that

Brady has no limitation in her ability to understand and remember simple or

complex instructions; has mild limitations in her ability to carry out simple

instructions and make work-related decisions; is moderately limited in her ability

to carry out complex instructions or make judgments on complex work-related

decisions; is moderately limited in her ability to interact with the public,

supervisors, and co-workers; is moderately limited in her ability to accept changes

in routine work settings; and is limited in concentration, persistence, and pace

because of low motivation and limited self-management.  *Id.* at 23.

The ALJ afforded Dr. Betts's opinion some weight, reasoning that it was

generally consistent with her own mental status examination of Brady which

showed average cognitive functioning and fair to intact judgment.  *Id.* at 24.  The

ALJ further reasoned that Dr. Betts's opinion was consistent with the objective

medical evidence which showed coherent thought processes; full orientation; intact

attention and concentration; intact associative thinking; and no evidence of

delusions, hallucinations, obsessions, reoccupations, or somatic thoughts.  *Id.*

The ALJ next considered the opinion of Brady's psychiatrist, Dr. Berger who opined that Brady has a moderate limitation in her ability to maintain attendance and punctuality, ask simple questions, get along with co-workers, be aware of hazards, take normal precautions, set realistic goals, make plans independently of others, interact with the public, maintain appropriate behavior, adhere to basic standards of neatness, use public transportation, and travel to unfamiliar places. *Id*. The ALJ further considered Dr. Berger's opinion that Brady had marked limitations in her ability to remember work-like procedures; understand, remember, and carry out short and simple instructions; complete a workday or workweek without interruption from psychologically based symptoms; perform at a consistent pace without unreasonable breaks; deal with normal stress; and accept instruction and criticism. *Id*. Additionally, the ALJ considered Dr. Berger's opinion that Brady had an extreme limitation in maintaining attention for two-hour segments, responding appropriately to routine changes in work, and working in proximity to others without being distracted. *Id*. The ALJ also considered Dr. Berger's opinion that Brady would be absent from work more than three times per month. *Id*.

The ALJ afforded Dr. Berger's opinion no weight and reasoned that it was inconsistent with the medical record, including both his own one-time mental status examination of Brady, and the examinations performed by his physician's

assistants, Mr. Feistl and Mr. Vinnacombe.  *Id.* at 25.  The ALJ noted that Dr.

Berger personally saw Brady only one time; that mental status examinations

performed by Mr. Feistl and Mr. Vinnacombe indicate coherent thought process,

full orientation, intact attention and concentration, intact associative thinking, and

no evidence of delusions, hallucinations, obsessions, reoccupations or somatic

thoughts.  The ALJ further reasoned that Brady consistently reported that the

medication prescribed to her was working and that she had no new complaints; and

that Brady consistently denied hallucinations, delusions, paranoia or disorganized

thinking or behavior.  *Id*.

At step four of the sequential evaluation process, the ALJ concluded that

Brady was unable to perform any past relevant work.  *Id.* at 26.  The ALJ then

continued to step five and concluded that Brady could perform other jobs in the

national economy, including work as a kitchen helper, a night cleaner or

housekeeper, and a garment sorter.  *Id.* at 26-27.  Thus, the ALJ found that Brady

was not disabled pursuant to the Social Security Act.  *Id*. at 27.

## V. Discussion.

### A. The ALJ Did Not Err in Weighing the Medical Opinion Evidence.

Brady argues errors in the ALJ decision regarding medical opinions as

follows: (1) that the ALJ erred by assigning no weight to the opinion of the treating

psychiatrist Dr. Berger; and (2) that the ALJ erred in the weight assigned to the opinion of the psychological consultative examiner Dr. Betts.[4]  *Doc. 15* at 4. Specifically, Brady asserts that the ALJ erred in rejecting the opinion of Dr. Berger without providing adequate explanation and argues further that, in finding Dr. Berger's opinion to be entitled to no weight, the ALJ interpreted the record based upon his own non-expert opinions.  *Id*. at 6-11.  Brady further argues that the ALJ erred in assigning some weight to Dr. Betts's opinion because she was not the treating physician; she admitted on cross-examination that she had not reviewed Brady's medical records before examining her; and she was not familiar with the "B" Criteria in the Listing of Impairments for Mental Disorders.  *Id*. at 11-13.

The Commissioner counter argues that the ALJ's decision is supported by substantial evidence.  *Doc. 18* at 1-27.  Specifically, the Commissioner argues that the ALJ's finding that Dr. Berger's opinion was inconsistent with the objective medical evidence was reasonable and fully supported by substantial evidence.  *Id.* at 16.  The Commissioner further responds that the ALJ's assignment of some weight to Dr. Betts's opinion was grounded in evidentiary support in the record. *Id.* at 21.  We find that the Commissioner prevails as to his arguments.

---

[4]     Although in her Statement of Errors Brady refers to the assignment of significant weight to the opinion of the consultative psychologist, it is clear from her argument in her brief and her reply brief that what she really is challenging is the ALJ's assignment of some weight to the opinion of the psychological consultative examiner, Dr. Betts.

11

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1) (applicable to claims filed before Mar. 27, 2017). "In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). But "[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). For claims—like Brady's—filed before March 27, 2017, the regulations provide that if "a treating source's medical opinions on the issue(s) of nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the Commissioner "will give it controlling weight." 20 C.F.R. § 404.1527(c)(2). Where the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors including, the "[l]ength of the

12

treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. *Id*. at § 404.1527(c)(2)–(c)(6).

The regulations provide that opinions on issues reserved for the Commissioner—such as whether a claimant is disabled and a claimant's residual functional capacity—are not considered medical opinions under the regulations and are not entitled to any "special significance" based on the source of the opinion. 20 C.F.R. § 404.152(d).  Nevertheless, "[t]he ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled." *Morales*, 225 F.3d at 317.

"In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Id*. at 317–18 (quoting *Plummer*, 186 F.3d at 429).  The ALJ also may not disregard a treating physician's "medical opinion based solely on his own 'amorphous impressions, gleaned from the record and from his evaluation of [the claimant]'s credibility.'" *Id*. at 318 (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983)).

Further, the ALJ must "provide 'good reasons' in his decision for the weight he gives to a treating source's opinion." *Ray v. Colvin*, No. 1:13-CV-0073, 2014 WL 1371585, at *18 (M.D. Pa. Apr. 8, 2014) (quoting 20 C.F.R. § 404.1527(c)(2)).  "A decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting in turn *Soc. Sec. Rul. 96– 2p,* 1996 WL 374188, *5 (1996)).  Thus, the "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

Here the ALJ afforded Dr. Berger's opinion no weight.  *Admin. Tr.* at 24-25. In support of that finding, the ALJ reasoned that Dr. Berger's opinion was inconsistent with his findings on his own mental status examination of Brady, as well as those of his physician assistants.  *Id*. at 25.  The ALJ further remarked that Dr. Berger had only personally seen Brady one time during the relevant period.  *Id*. The ALJ further pointed to the mental status examinations from 2016 to 2018,

14

most of which were performed by Dr. Berger's physician assistants, that recorded Brady's cooperative attitude; good eye contact; relevant and coherent thought processes, intact language processing; intact associative thinking; alert and oriented behavior; intact immediate, recent, and remote memory skills; intact judgment; intact to lacking insight; and no evidence of delusions, hallucinations, obsessions, preoccupations, or somatic thoughts. *Id*. Moreover, the ALJ considered that Brady consistently reported that her medication was working, and that she consistently denied new complaints. *Id*.

Thus, consistent with the applicable regulations, the ALJ did not substitute his own lay opinion for that of Dr. Berger's. Rather, as required, the ALJ supported his decision to give no weight to Dr. Berger's opinion by citing numerous inconsistencies in the record as a whole and making specific references to the parts of the record with which the opinion conflicted. We, therefore, find that substantial evidence supports the ALJ's evaluation of Dr. Berger's opinion here.

In contrast the assignment of no weight to Dr. Berger's opinion, the ALJ afforded Dr. Betts's opinion some weight. *Id.* at 24. Contrary to Brady's argument that Dr. Berger's opinion should have been afforded more weight because he was considered Brady's treating physician, examining physicians' medical opinions do not automatically trump non-examining physicians' opinions. *See Morris v. Colvin*,

No. 3:14-1902, 2015 WL 7252524, at *5 (M.D. Pa. Nov. 17, 2015) (explaining that

examining medical opinions do not inherently outweigh non-examining medical

opinions and that under certain conditions medical opinions from non-examining

medical consultants may garner more weight than examining or treating medical

sources medical opinions).  ALJ's have the discretion to afford greater weight to

medical opinions from non-examining physicians over those of examining

or treating physicians. *See Jackson v. Colvin*, No. 3:13-00886, 2014 WL 4955231,

at *9 (M.D. Pa. Sept. 30, 2014) (clarifying that "[w]hen the treating physician's

opinion conflicts with a non-treating, non-examining physician's opinion, the

[ALJ] may choose whom to credit in his or her analysis").

The ALJ reasoned that Dr. Betts's findings were consistent with the

objective medical evidence even though Dr. Betts was not able to review Brady's

medical records before rendering her opinion. *Admin. Tr.* at 24.  The ALJ noted

that Dr. Betts's mental status examination of Brady revealed cooperative but

mildly irritable behavior; appropriate dress with adequate hygiene; adequate

expressive and receptive language; appropriate eye contact but an unnerving stare

at Dr. Betts; irritable affect; coherent and goal-directed thought process; and no

evidence of delusions, hallucinations, or paranoia. *Id.*  The ALJ considered that Dr.

Betts's examination report indicated clear sensorium; orientation to person, time

and place; intact attention and concentration; impaired recent and remote memory

16

skills; fair insight and judgment; and average cognitive functioning. *Id*.

Additionally, the ALJ considered that mental status examinations performed by

Brady's treating mental health professionals revealed similar findings. *Id*.

In sum, the ALJ chose between contrasting medical opinions, giving greater

weight to those opinions which were more congruent with Brady's treatment

records and activities of daily living.  It is the right and responsibility of the ALJ to

make such assessments and we find that substantial evidence supported the ALJ's

decision.  Brady's argument simply asks the court to reweigh the evidence, which

we cannot do.  *See Thomas v. Massanari*, 28 Fed.Appx. 146, 147 (3d Cir. 2002).

Therefore, because we are not permitted to reweigh the evidence, we find that the

ALJ did not err in her consideration of the opinion evidence of record.

### B. The ALJ Did Not Err in Failing to Present a Hypothetical Question to the Vocational Expert That Contained the Limitations Outlined in Dr. Berger's Opinion.

Brady's last argument is that if the ALJ had credited the opinions of Dr.

Berger and included them in his hypothetical question, the vocational expert would

have testified that there was no work available in the national economy.  *Doc*. 15,

at 14.   The Commissioner responds that because the ALJ properly assigned no

weight to Dr. Berger's opinions, he was under no duty to adopt those restrictions in

his hypothetical question to the vocational expert.  *Doc*. 18, at 25-26.   We find that

the Commissioner prevails as to this issue.

17

In attacking the hypothetical posed to the vocational expert, Brady is attacking the RFC finding in the case and is again asking that we reweigh the evidence in the case, which we cannot do.  Having found that substantial evidence supported the ALJ's affording no weight to Dr. Berger's opinions, we must uphold the ALJ's determination that those limitations were not medically established. Consequently, we cannot find that the ALJ erred in omitting those limitations from his hypothetical question to the vocational expert because they do not meet the definition of "credibly established limitations."

A hypothetical posed to a vocational expert should include "all of a claimant's credibly established limitations." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).  If an uncontroverted medical opinion suggests a limitation, the ALJ must include it in the hypothetical before giving the vocational expert's opinion weight. *Id.*  "On the other hand, the ALJ has discretion to assess the credibility of '[l]imitations that are medically supported but are also contradicted by other evidence in the record.'" *Thomas v. Comm'r Soc. Sec.*, 819 F. App'x 90, 92 (3d Cir. 2020) (quoting *Barnhart*, 399 F.3d at 554).

Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but "cannot reject evidence for no reason or

the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (internal citations omitted).

Here, as noted above, Dr. Berger's opinion was not uncontradicted.  It was contradicted by the opinions of two other acceptable medical sources in the record who held similar specialization. And as noted above, the ALJ articulated sound reasoning for giving Dr. Berger's opinion.  Thus, as we have found that the ALJ properly exercised his duty to assign weight to the medical opinions and properly explained his reasoning in doing so, we find that his hypothetical question posed to the vocational expert was supported by substantial evidence.

## VI. Conclusion.

For the foregoing reasons, the decision of the Commissioner will be affirmed, and the final judgment will be entered in favor of the Commissioner and against Brady. The Clerk of Court is directed to close this case.  An appropriate order follows.

<u>**S/Susan E. Schwab**</u>
Susan E. Schwab
U.S. Magistrate Judge